**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TOBIA IPPOLITO,<br>*Plaintiff*,<br>v.<br>STUART RABNER, C.J.S.C., et al.,<br>*Defendants*. | Civil Action No. 20-18246<br>**OPINION**<br>August 25, 2026 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court upon Defendants William M. Laufer, Esq., Alexis N. Laufer, Esq., Kimberly Gronau-Boyd, Esq., and Laufer, Dalena, Jensen, Bradley & Doran, LLC's, (collectively, "Laufer Defendants") Motion to Dismiss *pro se* Plaintiff Tobia Ippolito's ("Plaintiff") Amended Complaint, (ECF 41, "Amended Complaint" or "AC"; ECF 83-4, "Laufer Motion" or "Laufer Mot."); Defendants the State of New Jersey, former Governor Philip D. Murphy, former State of New Jersey Attorney General Gurbir S. Grewal, Governor Mikie Sherrill, and Acting Attorney General Jennifer Davenport's (collectively, "State Defendants") Motion to Dismiss, (ECF 84-1, "State Motion" or "State Mot."); Defendants Supreme Court of New Jersey, Stuart J. Rabner, C.J., Heather Joy Baker, Stuart A. Minkowitz, A.J.S.C., Thomas L. Weisenbeck, J.S.C., Thomas J. Critchley, Jr., J.S.C., Phillip J. Maenza, J.S.C., Michael E. Hubner, J.A.D., Alison E. Accurso, P.J.A.D., Clarkson S. Fisher, J.A.D., Robert J. Gilson, P.J.A.D., Carmen Messano, J.A.D., Catherine I. Enright, J.S.C., Michael Lasko and Caryn Galgano's (collectively, "State Judiciary Defendants") Motion to Dismiss, (ECF 87-1, "State Judiciary Motion" or "State Jud. Mot."); and *pro se* Defendant Lisa Ippolito's ("Lisa") Motion to Dismiss,

(ECF 92, "Lisa Ippolito's Motion" or "L. Mot."), (collectively, "Defendants" and "Motions"). The Court has decided the Motions upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, the Laufer Motion, State Motion, State Judiciary Motion, and Lisa Ippolito's Motion are **GRANTED**; Plaintiff's Amended Complaint is **DISMISSED** in its entirety.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

This action arises from a series of events and New Jersey state court decisions related to *pro se* Plaintiff Tobia Ippolito's divorce proceedings and subsequent appeals. (*See generally* AC.) Defendant Lisa Ippolito is Plaintiff's former spouse who filed for divorce from Plaintiff in New Jersey Superior Court, Chancery Division, Family Part in Morris County on July 25, 2012 ("Matrimonial Matter"). (*See id.* ¶¶ 26, 34.) The Laufer Defendants are attorneys who represented Lisa during the Matrimonial Matter. (*Id.* ¶¶ 27-30.) The State Judiciary Defendants are state court judges who presided over the Matrimonial Matter or subsequent appeals and state court personnel. (*Id.* ¶¶ 7-9, 13-24.) The State Defendants are New Jersey public officials who allegedly failed to investigate alleged wrongdoings of the State Judiciary Defendants. (*See id.* ¶¶ 10-12, 185-86.)

### A. The Matrimonial Matter

1. Hon. Philip J. Maenza, J.S.C.

From August 2012 to September 2013, Defendant Judge Maenza presided over the Matrimonial Matter, which included the distribution of Plaintiff and Lisa's substantial martial

---

[1] When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The Court construes pro se filings liberally. *See Marcinek v. Comm'r*, 467 F. App'x 153, 154 (3d Cir. 2012).

assets—approximately $7,000,000 in liquid assets, an unmortgaged $5,000,000 "Crestview Mansion," two other unmortgaged homes, and a net worth of about $13,000,000. (*See id.* ¶¶ 36-38, 47-48, 50.) Judge Maenza awarded the Crestview Mansion to Lisa, instructed the sale of their two other homes, and ordered Plaintiff to pay Lisa $55,000 per month in spousal support. (*Id.* ¶¶ 48, 50-52.) Plaintiff alleges that Judge Maenza's ruling left him "homeless and [without] ability to pay" due to the onset of Plaintiff's 100% disability, which the Social Security Administration determined to be October 8, 2012. (*See id.* ¶¶ 6, 49, 52.)

In August 2013, Plaintiff sought to disqualify Judge Maenza due to alleged prejudice and bias. (*Id.* ¶ 53.) In his first appearance before Judge Maenza on August 17, 2012, Plaintiff alleges Judge Maenza disparagingly called Plaintiff and his family "tomatoes," after "assum[ing] [Plaintiff] was Italian." (*Id.* ¶ 43.) In subsequent hearings, Plaintiff alleges Judge Maenza continued to mock his national origin, called him a "jerk," and stated that he "wished [Plaintiff] was incarcerated." (*Id.* ¶¶ 45-46.) Although Judge Maenza found Plaintiff's allegations to be "devoid of merit," he recused himself from the Matrimonial Matter on September 30, 2013. (*Id.* ¶ 55.) In late 2016, Judge Maenza appeared before the New Jersey Senate Judiciary Committee and was reprimanded for his conduct toward Plaintiff during the Matrimonial Matter. (*Id.* ¶¶ 59, 73, 169-73.)

2. <u>Hon. Michael E. Hubner, J.S.C.</u>

In October 2013, the Matrimonial Matter was reassigned to Defendant Judge Hubner. (*Id.* ¶ 60.) Plaintiff promptly sought relief from Judge Maenza's previous orders, and Judge Hubner denied review allegedly because Judge Maenza dispelled Plaintiff's claims of bias in his recusal statement. (*Id.* ¶¶ 61-64.) On April 16, 2014, Judge Hubner ordered Plaintiff to show cause as to why he should not be held in contempt. (*Id.* ¶ 65.) Plaintiff alleges the order originated from

information Judge Hubner received in violation of the Health Insurance Portability and Accountability ("HIPPA") Act and related state laws. (*Id.*) After an April 23, 2014 hearing on the issue, Judge Hubner found Plaintiff in contempt of court and ordered him to submit to a psychological evaluation. (*Id.* ¶¶ 66-67.) On June 23, 2014, Plaintiff appealed Judge Hubner's contempt order to the New Jersey Superior Court Appellate Division. (*Id.* ¶ 68.)

On May 8, 2015, Plaintiff moved to disqualify Judge Hubner due to his alleged possession of unlawful information and cleanse the Matrimonial Matter record of all information released in violation of privacy laws. (*Id.* ¶ 85.) Plaintiff's motion was mooted due to the transfer of the Matrimonial Matter from Judge Hubner to Judge Critchley, which Plaintiff received notice of and objected to on June 11, 2015. (*Id.* ¶¶ 86-91.)

3. Hon. Thomas J. Critchley, J.S.C.

Judge Critchley promptly set the Matrimonial Matter for trial. (*Id.* ¶¶ 96-97.) Plaintiff then commenced a bankruptcy matter, filed certifications in support of probable cause against Judges Maenza, Hubner and Critchley, and petitioned for removal of the Matrimonial Matter to this Court.[2] (*Id.* ¶¶ 126-34.) Judge Critchley proceeded to trial without further delay, and this Court ultimately denied removal. (*Id.* ¶¶ 135, 139.) In February 2016, at the conclusion of an eight-day trial, Judge Critchley ordered $116,000 of the marital assets to be distributed to Lisa. (*See id.* ¶¶ 136-37; State Jud. Mot. at 2.) But enforcement of the post-trial order was stayed until a bankruptcy-related automatic stay was lifted on May 31, 2016. (AC ¶¶ 141, 153.)

On June 13, 2016, Judge Critchley ordered Plaintiff incarcerated for failure to comply with numerous court orders related to Plaintiff's support obligations. (*Id.* ¶ 154; ECF 41-2, "Attachment

[2] Plaintiff sought a stay pending appeal of his contempt order, which the Appellate Division granted, and then later vacated the contempt order on November 15, 2015. (*Id.* ¶¶ 103-05, 115.)

6" or "6/13/2016 Transcript" at 24:19-25:19.) Plaintiff was again taken into custody for continued noncompliance on June 20, 2016. (*See* AC ¶ 155.) Plaintiff then filed for emergent relief, which the Appellate Division granted and ordered Plaintiff's release from incarceration on June 22, 2016. (*Id.* ¶ 157.) On August 8, 2016, Plaintiff was arrested again for outstanding support obligations. (*Id.* ¶ 159.) Plaintiff alleges that correctional officers "attack[ed] and beat" him while being transported to and from court for subsequent hearings on August 9 and September 6, 2016. (*Id.* ¶¶ 160-61.) After traveling back from court on September 6, Plaintiff was subsequently hospitalized, released, and then placed in solitary confinement in the Morris County Correctional facility for 21 days. (*Id.* ¶¶ 162, 164.)

Also on September 6, 2016, Judge Critchley issued a final judgment of divorce ("FJOD") in the Matrimonial Matter.[3] (*Id.* ¶ 163.) On May 8, 2020, New Jersey Superior Court, Appellate Division Judges Clarkson S. Fisher, Alison E. Accurso, and Robert J. Gilson affirmed Judge Critchley's FJOD. (*See id.* ¶ 206.) On June 27, 2020, Plaintiff filed a notice of petition in the Supreme Court of New Jersey and again moved to proceed indigent. (*Id.* ¶ 209.) The Supreme Court of New Jersey subsequently denied Plaintiff's indigency motion and ordered Plaintiff to pay the requisite court fees, which Plaintiff alleges is a violation of his due process rights. (*Id.* ¶¶ 216-19.)

Between 2020 and 2024, numerous disputes arose between Plaintiff and the state judicial system regarding the amount Plaintiff owed in arrears and attorney fees, and Plaintiff alleges his non-payment resulted in his incarceration and other restrictions being placed on him in violation

[3] Plaintiff then moved to proceed indigent and requested transcripts from the court at no cost, which Judge Critchley denied on October 31, 2016. (AC ¶¶ 166-67.) Plaintiff appealed, and the Appellate Division affirmed the court's denial. (*See id.* ¶¶ 168, 175.)

of his liberties. (*See id.* ¶¶ 220-63.) As of February 29, 2024, Plaintiff continued to fail to fulfill his support obligations and owed $8,286,148.21 in arrears. (*See id.* ¶ 261.)

**B. Procedural History**

On December 8, 2020, Plaintiff filed suit in this Court. (ECF 1.) On May 10, 2024, Plaintiff filed the operative Amended Complaint. (*See generally* AC.) In his Amended Complaint, Plaintiff appears to allege due process and equal protection violations under the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983 (Counts I-II, V, VI); intentional and/or negligent infliction of emotional distress (Count III); wrongful execution and enforcement of laws (Count IV); and abuse of process (Count VII). (*See id.* ¶¶ 264-382.) Plaintiff seeks declaratory and injunctive relief regarding his state court indigency status, and monetary relief. (*See id.* at 46-47.) Defendants moved to dismiss Plaintiff's Amended Complaint. (ECF Nos. 44, 55, 56.) After several extension requests and in lieu of an opposition, Plaintiff moved to stay this matter to seek appellate review on October 23, 2024. (*See* ECF Nos. 57, 59, 64, 66, 68.) This Court granted the stay on October 29, 2024, and administratively terminated the pending motions to dismiss. (ECF 72.) On October 9 and 24, 2025, the Court ordered Plaintiff to provide an update on the status of his appeal by October 16 and 31, respectfully. (ECF Nos. 74, 76.) On November 3, 2025, Plaintiff filed a non-responsive letter indicating that he did not pursue an appeal. (ECF 77.) This Court subsequently lifted the stay and set a briefing schedule where Defendants were ordered to refile their previous motions to dismiss on or before January 23, 2026. (ECF Nos. 78, 81.)

On January 20, 2026, the Laufer Defendants moved to dismiss Plaintiff's Amended Complaint. (Laufer Mot.) The State Defendants moved on January 23, 2026, (State Mot.), and the State Judiciary Defendants moved on January 30 after this Court granted a one-week extension. (State Jud. Mot.; ECF 86.) *Pro se* Defendant Lisa Ippolito filed two untimely motions to dismiss

on February 2 and 3, 2026, which the Court considers collectively and *nunc pro tunc* due to filing complications identified in Lisa's submissions. (L. Mot.; *see* ECF Nos. 88, 91, 94.) Pursuant to this Court's scheduling order and 2026 motion calendar, Plaintiff's opposition to the Laufer Motion and State Motion was due on February 3, 2026, and his opposition to the State Judiciary Motion and Lisa Ippolito's Motion was due on February 17. (ECF 81); *see* L. Civ. R. 78.1(a). On March 20, 2026, Plaintiff filed a letter advising the Court that he was diagnosed with pneumonia on February 28. (ECF 95.) This Court construed Plaintiff's letter as an extension request and, pursuant to the Court's discretion, subsequently denied an extension as Plaintiff had sufficient time to file opposition papers or request an extension by February 3 and 17, well before his diagnosis on February 28. (ECF 96); *see* L. Civ. R. 6.1(b). Additionally, the Court previously granted Plaintiff numerous extension and stay requests in this matter, which substantially delayed adjudication over five and a half years. (*See* ECF Nos. 13, 16, 36, 40, 58, 60, 64, 76.)

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

"When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Dickerson v. Bank of Am., N.A.*, No. 12-3922, 2013 WL 1163483, at *1 (D.N.J. Mar. 19, 2013) (citing *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993)). In considering dismissal for lack of subject matter jurisdiction, a district court's focus is not on whether the factual allegations entitle a plaintiff to relief, but rather on whether the court has jurisdiction to hear the claim and grant relief. *Maertin v. Armstrong World Indus., Inc.*, 241 F. Supp. 2d 434, 445 (D.N.J. 2002).

Rule 12(b)(1) motions may challenge subject matter jurisdiction based upon the face of the complaint or its underlying facts. *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d

Cir. 2009); *Pittman v. Metuchen Police Dept.*, No. 08-2373, 2009 WL 3207854, at *1 (D.N.J. Sept. 29, 2009) (citing James Wm. Moore, 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007)). A facial attack questions the sufficiency of the pleading and requires the trial court to accept the allegations in the complaint as true. *Common Cause of Pa.*, 558 F.3d at 257; *Pittman*, 2009 WL 3207854, at *1. A factual attack, by contrast, calls upon the court to weigh the evidence. *Pittman*, 2009 WL 3207854, at *1.

Here, the State and State Judiciary Defendants assert the defense of sovereign immunity under the Eleventh Amendment based on the pleadings, thereby raising a facial attack. *See Perez v. New Jersey*, No. 14-4610, 2015 WL 4394229, at *3 (D.N.J. July 15, 2015) ("[T]he State Defendants' motion asserts the defense of sovereign immunity based on the facts as pleaded in the Second Amended Complaint and is thus a facial attack."). Accordingly, "the Court must consider the allegations of the complaint as true," much like a Rule 12(b)(6) motion to dismiss. *Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at *8 (D.N.J. June 11, 2010) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)).

**B. Federal Rule of Civil Procedure 12(b)(6)**

Rule 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show

more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

When a plaintiff files a complaint *pro se*, their "pleadings must be liberally construed." *Alexander v. Gennarini*, 144 F. App'x 924, 926 (3d Cir. 2005). The arguments of *pro se* litigants "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *Phillips v. Ctny. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). However, when a Plaintiff alleges legal conclusions disguised as factual assertions, or factual assertions that are otherwise unreasonable, the court is under no obligation to accept such allegations as true. *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007) (holding a court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations"). If, after reviewing the pleadings, a court determines that a plaintiff failed to establish a claim and construed all reasonable facts and inferences in favor of the plaintiff, the court may dismiss the complaint for failure to state a claim upon which relief can be granted. *Stringer v. Bureau of Prisons, Federal Agency*, 145 F. App'x 751, 2005 WL 2009019, at *1 (3d Cir. 2005).

## III. ANALYSIS

### A. Plaintiff's Federal Claims Are Barred on Immunity Grounds.

Plaintiff asserts 42 U.S.C. § 1983 claims against the State and State Judiciary Defendants. (*See* AC ¶¶ 1, 3.) Section 1983 does not provide substantive rights; rather, it provides a vehicle for vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (citation omitted). To state a § 1983 claim, a plaintiff must demonstrate that (1) a person deprived

him of a right secured by the Constitution or federal law; and (2) the person who deprived him of that right acted under color of state law. *Velez v. Fuentes*, No. 15-6939, 2016 WL 4107689, at *2 (D.N.J. July 29, 2016) (citation omitted).

The State and State Judiciary Defendants raise several grounds for dismissing Plaintiff's Amended Complaint. (*See generally* State Mot.; State Jud. Mot.) First, the Eleventh Amendment bars Plaintiff's official-capacity claims because the State of New Jersey is entitled to sovereign immunity and the other State and State Judiciary Defendants are arms of the State.[4] Second, for Plaintiff's individual-capacity claims, former Governor Murphy and former Attorney General Grewal, the state court judges, and remaining state employees are entitled to qualified immunity, absolute judicial immunity, and quasi-judicial immunity, respectively.[5] Thus, none of the State or State Judiciary Defendants are "persons" subject to liability under § 1983, and the Court must accordingly dismiss Counts I-II, V, and VI of the Amended Complaint. The Court agrees and addresses each argument in turn.[6]

---

[4] A motion to dismiss based upon sovereign immunity is properly brought pursuant to Rule 12(b)(1) because sovereign immunity implicates the Court's subject matter jurisdiction. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) ("[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction.").

[5] "Assertions of judicial and qualified immunity, as affirmative defenses which raise 'insuperable barriers' to claims, *see Flight Sys., Inc. v. Elec. Data Sys.*, 112 F.3d 124, 127 (3d. Cir. 1997), are analyzed under Rule 12(b)(6)." *Edelglass v. New Jersey*, No. 14-760, 2015 WL 225810, at *6 (D.N.J. Jan. 16, 2015) (citing *Green v. Maraio*, 722 F.2d 1013, 1015-19 (3d Cir. 1983)).

[6] The State and State Judiciary Defendants further argue, *inter alia*, that Plaintiff has failed to plead a plausible claim for relief, and that the Court must abstain from hearing Plaintiff's claims under the *Rooker-Feldman* doctrine. (*See generally* State Mot.; State Jud. Mot.) Because the Court dismisses Plaintiff's Amended Complaint as to them on immunity grounds, the Court need not consider Defendants' additional grounds for dismissal.

1. Eleventh Amendment Sovereign Immunity

The State and State Judiciary Defendants argue that this Court lacks subject matter jurisdiction as to Plaintiff's official-capacity claims because they are subject to sovereign immunity. (State Mot. at 17-21; State Jud. Mot. at 6-10).

A federal court generally does not have jurisdiction over suits against "a state or state agency … brought in federal court by one of its own citizens regardless of the relief sought, unless Congress specifically abrogates the state's immunity or the state waives its own immunity." *Thorpe v. New Jersey*, 246 F. App'x 86, 87 (3d Cir. 2007) (citations omitted). Accordingly, Eleventh Amendment sovereign immunity protects non-consenting states from suits brought in federal court by private citizens seeking monetary damages. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100-01 (1984). The immunity extends beyond the State and immunizes state agencies, departments, and officials, provided they constitute "arm[s] of the state." *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *see also Haybarger v. Lawrence Ctny. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) (finding that the shield of Eleventh Amendment sovereign immunity extends to "subunits of the State").

Specifically, the Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Courts have interpreted the Eleventh Amendment as affirming "the fundamental principle of sovereign immunity" as a limit on a federal court's authority. *Pennhurst*, 465 U.S. at 98. Accordingly, the Eleventh Amendment bars all private suits against non-consenting states in federal court. *Lombardo v. Pa., Dep't of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir. 2008) (citing *Hans v. Louisiana,* 134 U.S. 1, 10 (1890)); *see Pennhurst*, 465 U.S.

at 101. The bar extends to state employees acting in their official capacities, in addition to agencies and departments of the State. *See Pennhurst*, 465 U.S. at 101.

Although there are three exceptions to sovereign immunity, none apply in this case. First, "Congress may abrogate state sovereign immunity in the exercise of its power to enforce the Fourteenth Amendment." *Antonelli v. New Jersey*, 310 F. Supp. 2d 700, 713 (D.N.J. 2004). It is clear, however, that Congress did not abrogate states' sovereign immunity in enacting any of the statutes raised here. *See Bennett v. City of Atlantic City*, 288 F. Supp. 2d 675, 683-84 (D.N.J. 2003) (explaining that Congress did not abrogate state immunity when enacting 42 U.S.C. §§ 1981, 1983 or 1985); *Quern v. Jordan*, 440 U.S. 332, 345 (1979) (finding that § 1983 does not override a state's Eleventh Amendment sovereign immunity).

Second, a state may waive sovereign immunity by consenting to suit in federal court by "invok[ing] [its] jurisdiction by bringing suit," or by making "a clear declaration that it intends to submit itself to [federal court] jurisdiction." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503-04 (3d Cir. 2001). Here, there is no indication that the State or State Judiciary Defendants waived their sovereign immunity. (*See* State Mot. at 17-21; State Jud. Mot. at 6-8.)

Under the third exception, the *Ex Parte Young* doctrine, "individual state officers can be sued in their individual capacities for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law."[7] *MCI Telecomm. Corp.*, 271 F.3d at 506 (citing *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)). "This exception to the Eleventh Amendment is a very narrow one," and does not apply to "[l]awsuits seeking retroactive relief, usually in the form

---

[7] The theory of the *Ex Parte Young* doctrine is that a claim for prospective relief for an ongoing violation of federal law is "not an action against the state because the [alleged violation] would strip the officer of his official authority." *MCI Telecomm. Corp.*, 271 F.3d at 506 (citing *Pennhurst*, 465 U.S. at 103).

of monetary damages and declaratory judgment for past conduct, against a state official." *Doe v. Div. of Youth & Fam. Servs.*, 148 F. Supp. 2d 462, 483 (D.N.J. 2001). Here, Plaintiff seeks a "declaratory order" against the State and State Judiciary Defendants to overturn the State Judiciary's denial of his indigency status, which allegedly resulted in violations of "Plaintiff's rights under the United States Constitution, Fourteenth Amendment Due Process and Equal Protection Clauses …." (AC at 47.) Accordingly, Plaintiff fails to plausibly state a claim for *prospective* injunctive relief as his allegations stem from past conduct in the Matrimonial Matter—not a continuing violation of federal law, and therefore the *Ex Parte Young* exception does not apply.

Furthermore, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by *a person* acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added). Neither a state nor entity that is an arm of the state for Eleventh Amendment purposes qualify as a "person" under Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."); *N.J. Chinese Cmty. Ctr. v. McAleer*, No. 21-8320, 2022 WL 3403297, at *7 (D.N.J. Aug. 15, 2022) (citation omitted) ("[B]ecause a state is not a 'person' within the meaning of section 1983 . . . it follows that the State of New Jersey cannot be held liable as a 'person' under any of these sections of the Civil Rights Act."). And in *Allen v. Debello*, 861 F.3d 433 (3d Cir. 2017), the Third Circuit found that when judicial defendants have acted in an adjudicatory capacity and not in an enforcement capacity, they are not proper defendants in § 1983 litigation. *Id*. at 442. Here, the State Judiciary Defendants acted in an adjudicatory capacity by presiding over the Matrimonial Matter and subsequent appeals. To be sure, the State Judiciary

Defendants did not initiate these actions; rather, a non-judicial party, Lisa Ippolitio, initiated the divorce and related custody determinations. *See id.* (finding that state court judges who presided over a custody dispute are not proper parties under § 1983). Thus, Plaintiff's § 1983 claims are not proper.

Accordingly, because the State and State Judiciary Defendants, in their official capacities, are either considered a State or "arms" of the State, and no exception applies, they are entitled to Eleventh Amendment sovereign immunity. The Court **DISMISSES** Counts I-II, V, and VI of the Amended Complaint against the State and State Judiciary Defendants, in their official capacities, pursuant to Rule 12(b)(1).

2. Qualified Immunity

The State Defendants further argue that former Governor Philip D. Murphy and former Attorney General Gurbir S. Grewal are immune from suit in their individual capacities. (State Mot. at 21-24.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Montanez v. Thompson*, 603 F.3d 243, 249-50 (3d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. "To overcome qualified immunity, a plaintiff must plead facts 'showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164, 168-69 (3d

Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). For the second prong, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." *Id.* at 169 (quoting *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001)). And the clearly established right must be framed "in light of the specific context of the case, not as a broad general proposition." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)).

Here, Plaintiff asserts that former Governor Murphy and former Attorney General Grewal declined to investigate alleged State Judiciary Defendants' wrongdoings that Plaintiff reported. (*See* AC ¶¶ 185-86.) State Defendants argue that Plaintiff does not have a statutory or constitutional right to demand an investigation—let alone a clearly established right. (State Mot. at 24 (citing *al-Kidd*, 563 U.S. at 735).) In fact, the Third Circuit has noted that "[t]here is no statutory or common law right, much less a constitutional right, to [such] an investigation." *Fuchs v. Mercer Cnty.*, 260 F. App'x 472, 475 (3d Cir. 2008) (alteration in original) (quoting *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007)) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (observing that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another")).

Accordingly, former Governor Murphy and former Attorney General Grewal are entitled to qualified immunity. The Court **DISMISSES** Counts I-II, V, and VI of the Amended Complaint against them on these grounds pursuant to Rule 12(b)(6).

3. <u>Absolute Judicial Immunity</u>

The State Judiciary Defendants further argue that Plaintiff's claims against the state court judges in their individual capacities must be dismissed pursuant to the doctrine of absolute judicial immunity. (State Jud. Mot. at 16-18.)

"A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Capogrosso v. Sup. Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009) (quoting *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006)). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted 'in the clear absence of all jurisdiction.'" *Id.* (citations omitted).

The Supreme Court of the United States has, however, identified two exceptions to this rule. "First, a judge is not immune from liability for non-judicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). To determine whether an act is judicial, courts look to "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S.at 12. "[A] judge does not act in the clear absence of all jurisdiction when the judge enters an order at least colorably within the jurisdiction of her court even though a court rule or other procedural constraint required another judge to act in the matter." *Gallas v. Sup. Ct. of Pa.*, 211 F.3d 760, 771 (3d Cir. 2000).

The Court finds that the facts laid out in Plaintiff's Amended Complaint describe judicial conduct carried out within the State Judiciary's jurisdiction. For example, Plaintiff claims that: the State Judiciary Defendants violated his substantive and procedural due process rights by denying Plaintiff indigency status and free transcripts, (*see* AC ¶ 270); Superior Court Judge Maenza awarded the Crestview Mansion to Lisa without notice and ordered Plaintiff to pay $55,000 per month in support obligations, (*id.* ¶¶ 48, 52); Superior Court Judge Hubner, acting *sua*

*sponte*, found Plaintiff in contempt and ordered a psychological evaluation, (*id.* ¶ 67); Superior Court Judge Critchley held proceedings without Plaintiff, issued the FJOD, and ordered Plaintiff incarcerated for failure to comply with his support obligations, (*id.* ¶¶ 154-55, 163); Appellate Division Judges Fisher, Accurso and Gibson affirmed Judge Critchley's FJOD on all points, (*id.* ¶ 206); and Supreme Court of New Jersey Chief Justice Rabner ordered Plaintiff to pay the requisite filing fees after denying his motion to proceed as an indigent, (*id.* ¶ 216).

Moreover, to the extent Plaintiff alleges the State Judiciary Defendants "conspir[ed] to conceal the bad acts of their colleagues," (*see id.* at 2), allegations of a conspiracy do not alter the result that the state court judges are entitled to immunity for their judicial acts, including ordering support obligations and custody in divorce proceedings and denying applications to proceed indigent. *See Owens v. Armstrong*, 171 F. Supp. 3d 316, 330 (D.N.J. 2016) (holding that judicial immunity extends to suits where it is alleged that the judge is acting as part of a conspiracy) (citing *Dennis v. Sparks*, 449 U.S. 24, 26-27 (1980)); *see also Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (affirming dismissal of conspiracy claim on judicial immunity grounds). Likewise, any allegations of restricting Plaintiff's access to the courts, (*see* AC ¶ 3), are subject to absolute immunity as a judge's judicial jurisdiction is to be broadly construed, and "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *See Gallas*, 211 F.3d at 769; *see also* N.J. Ct. R. 2:7-1(a) (noting the court's authority to deny applications to proceed indigent and motions for relief from fees)

Finally, Plaintiff's conclusory pleadings as to the State Judiciary Defendants' alleged deprivation of substantive and procedural due process and equal protection of the law fails to meet

the pleading standards set forth in *Twombly* and *Iqbal*.[8] The State Judiciary Defendants' involvement with Plaintiff arises out of the Matrimonial Matter and subsequent appeals, a family court dispute regarding the Ippolito family's divorce and custody. The allegations within the Amended Complaint against the State Judiciary Defendants are rooted in the work as jurists—issuing decisions, rulings, and orders in their capacity as presiding state court judges. Despite the litany of allegations, the supposed "non-judicial" actions are either under the purview of judicial acts covered by absolute judicial immunity, or they woefully lack the specificity or clarity necessary to conform to the pleading requirements of *Twombly* and *Iqbal*.

As a result, Plaintiff has not pled any facts to show that the State Judiciary Defendants' various actions in the Matrimonial Matter and subsequent appeals were non-judicial or taken in the absence of jurisdiction. Accordingly, Defendants Stuart J. Rabner, C.J., Stuart A. Minkowitz, A.J.S.C., Thomas L. Weisenbeck, J.S.C., Thomas J. Critchley, Jr., J.S.C., Phillip J. Maenza, J.S.C., Michael E. Hubner, J.A.D., Alison E. Accurso, P.J.A.D., Clarkson S. Fisher, J.A.D., Robert J. Gilson, P.J.A.D., Carmen Messano, J.A.D., Catherine I. Enright, J.S.C. are entitled to absolute judicial immunity; and the Court **DISMISSES** Counts I-II, V, and VI of the Amended Complaint against them on these grounds pursuant to Rule 12(b)(6).

4. <u>Quasi-Judicial Immunity</u>

The State Judiciary Defendants also argue that Plaintiff's claims against Defendants Heather Joy Baker ("Baker"), Michael Lasko ("Lasko"), and Caryn Galgano ("Galgano") in their

---

[8] The Court recognizes Plaintiffs are proceeding *pro se*, and therefore, generally construes the pleadings liberally and holds them to a less stringent standard than papers filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court, however, need not "credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

individual capacities must be dismissed pursuant to the doctrine of quasi-judicial immunity. (State Jud. Mot. at 18-20.)

Quasi-judicial immunity protects a range of judicial employees, including "those who serve as 'arms of the court,' ... fulfill[ing] a quasi-judicial role at the court's request." *Russell v. Richardson*, 905 F.3d 239, 247 (3d Cir. 2018) (quoting *Hughes v. Long*, 242 F.3d 121, 126 (3d Cir. 2001)). To determine whether the judicial employee is "fulfill[ing] a quasi-judicial role," courts take a "functional approach to immunity." *Id.* Courts "examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Id.* (quoting *Forrester v. White*, 484 U.S. 219, 224 (1988)).

However, "[m]erely being part of the judicial function, even an extremely important part, will not automatically entitle one to quasi-judicial immunity." *Id.* "The Third Circuit has adopted the six-factor test outlined in the Supreme Court's decision in *Butz v. Economou*, 438 U.S. 478 (1978), as the "touchstones of its quasi-judicial immunity inquiry." *Khawam v. Allen*, No. 23-22465, 2025 WL 654107, at *9 (D.N.J. Feb. 27, 2025). "Those factors are (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) insulation from political influence; (4) the importance of precedent; (5) the adversary nature of the process; and (6) the correctability of error on appeal." *Id.* (citing *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011)).

Here, after applying the factors, the Court concludes that Defendants Baker, Lasko, and Galgano were performing a quasi-judicial function at the State Judiciary's request and are therefore

entitled to quasi-judicial immunity. Baker is the Clerk of the New Jersey Supreme Court, (AC ¶ 8), and allegedly denied some of Plaintiff's applications regarding his appeal of the Matrimonial Matter at the behest of Chief Justice Rabner. (*See id.* ¶¶ 197, 205, 216.) The Third Circuit has found that clerks of New Jersey courts "are entitled to 'absolute quasi-judicial immunity for [their] actions taken in [their] capacity as [a] [c]lerk ….'" *See, e.g.*, *Grossberger v. Clerk of Sup. Ct.*, No. 21-19959, 2025 WL 3294373, at *6 (D.N.J. Nov. 25, 2025) (quoting *Nemeth v. Off. of Clerk of Superior Ct. of N.J.*, 837 F. App'x 924, 928 (3d Cir. 2020)). Because the Court concludes that the judges comprising the State Judiciary Defendants—including Chief Justice Rabner—are entitled to absolute judicial immunity, Baker is also "absolutely immune for simply acting as an intermediary between [Plaintiff] and the judge." *Gallas*, 211 F.3d at 773.

Lasko and Galgano are probation officers in the Probation Division of the Morris/Sussex Vicinage of the Superior Court of New Jersey ("Probation"), (*see id.* ¶¶ 23-24), and allegedly refused to credit Plaintiff's support arrears in the Matrimonial Matter upon service of related court orders. (*Id.* ¶¶ 236, 239-43.) "As quasi-judicial officers, probation officers are cloaked with judicial immunity when they act pursuant to a court directive." *Torres v. Velasquez*, No. 17-1685, 2017 WL 5725053, at *2 (D.N.J. Nov. 28, 2017) (citing *Stankowski v. Farley*, 251 F. App'x. 743, 746 (3d Cir. 2007)). In this case, after a determination of Plaintiff's ability to pay, Judge Critchley incarcerated Plaintiff for 196 days for failing to pay over $6,000,000.00 in arrears and ordered Plaintiff to report to Probation on a weekly basis after his release. (AC ¶¶ 231-35.) It therefore follows that Lasko and Galgano acted pursuant to their roles of fulfilling Judge Critchley's directives when allegedly considering Plaintiff's documents related to Plaintiff's arrears. *See Dey-El v. Rosenberg*, No. 14-7091, 2015 WL 4391399, at *3 (D.N.J. July 15, 2015) (citing *Pell v. Ross*, No. A–4799–03T5, 2006 WL 572339, at *3 (N.J. Super. Ct. App. Div. Feb.28, 2006) (finding

quasi-judicial immunity for a probation officer who performed duties as required by court order compelling child support obligor's incarceration)).

While the Supreme Court has identified two narrow exceptions to the rule of quasi-judicial immunity, neither are appliable here.[9] To be sure, aside from merely asserting that Defendants Baker, Lasko, and Galgano are not entitled to quasi-judicial immunity, (*see* AC ¶ 1), Plaintiff fails to show, first, that their alleged actions were unrelated to their roles, or second, that they acted completely without jurisdiction. And there is nothing in Plaintiff's Amended Complaint that credibly suggests so. Therefore, Defendants Baker, Lasko, and Galgano enjoy the benefit of quasi-judicial immunity; and the Court **DISMISSES** Counts I-II, V, and VI of the Amended Complaint against them on these grounds pursuant to Rule 12(b)(6).

### B. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's State Law Claims.

In Counts III, IV, and VII of the Amended Complaint, Plaintiff asserts intentional or negligent infliction of emotional distress, failure to enforce the law, and abuse of process claims under New Jersey law against the State and State Judiciary Defendants, the Laufer Defendants, and Defendant Lisa Ippolito. (*See* AC ¶¶ 1, 5.) Plaintiff sought to have his state law claims heard in this Court as supplemental claims pursuant to 28 U.S.C. § 1367(a). (*Id.*)

The Court will not exercise supplemental jurisdiction over Plaintiff's state law claims. First, "the Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court." *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 540-41 (2002). Second, pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline

[9] Like absolute judicial immunity, quasi-judicial immunity does not extend to non-judicial actions—*i.e.*, actions not taken in a judicial capacity—nor does judicial immunity extend to actions that, although judicial in nature, are taken in the complete absence of all jurisdiction. *Mireles*, 502 U.S. at 11-12.

to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc. v. Del. Cnty., Pa.*, 983 F.2d 1277, 1284 (3d Cir. 1993) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *Id.* at 1284-85; *United Mine Workers*, 383 U.S. at 726; *see also City of Pittsburgh Comm'n. on Hum. Rels. v. Key Bank USA*, 163 F. App'x 163, 166 (3d Cir. 2006) ("[I]f it appears that all federal claims are subject to dismissal, the court should not exercise jurisdiction over remaining claims unless 'extraordinary circumstances' exist.").

Here, because Plaintiff's intentional or negligent infliction of emotional distress, failure to enforce the law, and abuse of process claims are based purely on state law, they are not claims over which this Court has original jurisdiction. Thus, the Court is barred from exercising supplemental jurisdiction over Plaintiff's state law claims against the State and State Judiciary Defendants in their official capacities, and, in its discretion at the motion to dismiss phase in this litigation, declines to exercise supplemental jurisdiction in the remaining circumstances. Accordingly, the Court **DISMISSES** Counts III, IV, and VII of the Amended Complaint in their entirety pursuant to Rule 12(b)(1).

### C. The Court Denies Plaintiff Leave to Further Amend His Claims.

Defendants contend that the Court should dismiss Plaintiff's Amended Complaint with prejudice. (*See generally* Motions.) "A dismissal with prejudice operates as an adjudication on

the merits and typically prevents the plaintiff from subsequently litigating his claims in either the original or any other forum." *Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607, 610-11 (3d Cir. 2020) (internal quotation omitted). A dismissal without prejudice, in contrast, "does not operate as an adjudication upon the merits," and therefore, has no preclusive effect. *Id.*

The Court dismisses Plaintiff's individual-capacity claims in Counts I, II, V, and VI with prejudice.[10] However, because the Court dismisses Plaintiff's official-capacity claims for lack of subject matter jurisdiction, and declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, there has been no respective adjudication on the merits, "and therefore it is improper to dismiss [such claims] with prejudice." *See, e.g.*, *Hicks v. N.J.D.O.C.*, No. 16-927, 2017 WL 168917, at *4 (D.N.J. Jan. 17, 2017) (dismissing complaint on sovereign immunity grounds without prejudice). Accordingly, the Court dismisses Counts III, IV, and VII and Plaintiff's official-capacity claims in Counts I, II, V, and VI without prejudice.

The Court next considers whether leave to amend should be granted. *See Free Speech Coal., Inc. v. Att'y Gen. of U.S.*, 677 F.3d 519, 545 (3d Cir. 2012) ("Leave to amend should be freely given when justice so requires, including for a curative amendment unless such an

[10] "The Third Circuit has approved of dismissal with prejudice on judicial immunity grounds." *Bright v. Hoebich*, No. 24-9625, 2025 WL 1311401, at *4 n.4 (D.N.J. May 6, 2025) (citing, *inter alia*, *Williams v. Stack*, No. 23-2685, 2024 WL 3548766, at *1 (3d Cir. July 26, 2024) (per curiam) (approving a district court's dismissal with prejudice when claims are dismissed on judicial immunity grounds)). "Dismissal with prejudice is proper because any amendment of the claims against the [State Judiciary Defendants] would be futile as all the events alleged involve [their] judicial role." *Id.*

The Third Circuit has also approved of dismissal with prejudice on qualified immunity grounds. *See Roth v. City of Hermitage*, 709 F. App'x 733, 736 (3d Cir. 2017) (remanding "to allow the District Court to consider whether the claims … should be dismissed with prejudice on the basis of qualified immunity"); *see also Thomas v. Indep. Twp.*, 463 F.3d 285, 300 (3d Cir. 2006) ("[A] district court must avail itself of the procedures available under the Federal Rules to facilitate an early resolution of the qualified immunity issue.").

amendment would be inequitable or futile."). Given Plaintiff's claims, the Court finds that even if Plaintiff were to plead new facts, he would be unable to avoid the sovereign immunity bar to suit extensively briefed by the State and State Judiciary Defendants. As a result, the Court denies Plaintiff leave to file a second amended complaint as further amendment would be futile. *See, e.g.*, *Clemente v. Dep't of Transp.*, No. 25-1967, 2025 WL 3043374, at *2 (3d Cir. Oct. 31, 2025) (finding amendment futile after dismissal without prejudice on sovereign immunity grounds "as [Plaintiff] could not add any factual allegations to overcome th[e] barrier to relief"); *Berk v. New Jersey Unemp. Ins.*, No. 23-12891, 2024 WL 4891749, at *3 (D.N.J. Nov. 26, 2024) (same). Therefore, the Court's dismissal of this matter is final. *See Aldossari on Behalf of Aldossari v. Ripp*, 49 F.4th 236, 262 (3d Cir. 2022); *Weber v. McGrogan*, 939 F.3d 232, 238 (3d Cir. 2019).

## IV. CONCLUSION

For the reasons stated above, the Defendants' Motions to Dismiss Plaintiff's Amended Complaint are **GRANTED**. All individual-capacity claims against Defendants are **DISMISSED** with prejudice. All official-capacity claims against Defendants are **DISMISSED** without prejudice and without leave to amend. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Stacey D. Adams, U.S.M.J.
Parties